IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| GLENN FLOYD SMITH, #851176 | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-02-869 |
| | § | |
| DOUG DRETKE, DIRECTOR | § | |
| OF TDCJ-CID | § | |

## **REPORT AND RECOMMENDATION**

Before the Court is the "Petition for a Writ of Habeas Corpus by a Person in State Custody" filed by Glenn Floyd Smith, a prisoner in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID"). Respondent has filed an Answer, and Petitioner has responded with his own motion for summary judgment. Having carefully considered the Petition, the parties' motions and briefs, and the state records, the Court submits its Report and Recommendation to the District Court.

The Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. §§ 2241 and 2254. Petitioner is the father of five children. Child Protective Services ("CPS") investigated the family on a number of occasions prior to April, 1996, finding poor living conditions and drug use by the parents but no signs of sexual abuse. In April, however, Petitioner's daughter, Ki.S., revealed that Petitioner had sexually abused her. Over the next eighteen to twenty-four months, sons G.S., R.S., and J.S. also claimed that they had been sexually abused by Petitioner. Medical exams of the four children showed changes in the boys' anuses and the girl's vagina consistent with penetration.

1

Smith was charged with four counts of aggravated sexual assault of a child. He was tried by a jury in the 10th District Court of Galveston County, Texas. On September 9, 1998, he was found guilty on all counts and sentenced to eighteen years imprisonment for each offense. The convictions were affirmed on appeal on November 2, 2000, and his Petition for Discretionary Review ("PDR") was refused on May 2, 2001. Petitioner subsequently filed four identical writs of habeas corpus in state court pursuant to Article 11.07 of the Texas Code of Criminal Procedure on May 28, 2002. After they were denied without written order on October 30, 2002, Petitioner filed the instant writ in federal court on December 11, 2002.

## Discussion

The Procedural Bar Issue

Petitioner argues that he is entitled to habeas relief on fifty grounds. A federal court may not grant relief on a claim that has not been exhausted. 28 U.S.C. § 2254(b)(1)(A). This requires a prisoner to have submitted his claims to the state's highest court before bringing them in a federal habeas writ. *Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993). However, claims that have not been previously presented to the state court will ordinarily be procedurally barred in a subsequent Article 11.07 writ under Texas' abuse-of-the-writ doctrine. Tex. Code. Crim. Proc. 11.07, § 4. Such an unexhausted claim that would be procedurally barred on return to the state court is barred from federal consideration. *Fuller v. Johnson*, 158 F.3d 903, 905 (5th Cir. 1998); *Nobles v. Johnson*, 137 F.3d 409, 422 (5th Cir. 1997). As the State points out, Petitioner can avoid this bar only by showing (1) cause for default and actual prejudice, or (2) that failure to consider his claims will result in a miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The Court's review of the Article 11.07 writs and Petitioner's PDR shows that he raised only the following grounds to the Court of Criminal Appeals:

1. He was denied effective assistance of trial counsel when his attorney failed to investigate and litigate his case and was denied effective assistance of appellate counsel when his lawyer failed to raise all proper issues;

2. His conviction was supported by insufficient evidence;

3. The State used a fraudulent indictment;

4 - 5. His conviction was obtained in violation of state statutes and rules;

6. The trial court erred in admitting expert testimony concerning abused children;

7. The trial court erred in admitting expert testimony concerning the victims' credibility;

8. He was denied the right to establish a defense with his own expert;

9. His conviction was based on improper hearsay statements; and,

10. He was denied the right to elicit testimony from the victims' mother.

In lieu of listing the multiple claims raised in the federal writ that were not brought before the Texas Court of Criminal Appeals in either an Article 11.07 writ or the PDR, the Court notes that all such claims are unexhausted. Since Petitioner cannot now return to state court and has shown no reason for overcoming the statutory bar, all such unexhausted claims are procedurally barred from consideration by this Court. The State argues that this includes the following claims raised in the federal writ: Issues 3-7, 9-10, 14-19, 24-27, 30-36, and 39-50. The Court agrees. These issues were clearly not presented to the state's highest court and are therefore procedurally barred in this Court.

However, the State overlooks the fact that issue 22 is also unexhausted. Petitioner alleges that the trial court violated his Sixth and Fourteenth Amendment rights when it allowed Debra Wilson, the victims' grandmother, to testify at trial. This issue was never raised in the PDR or the state writs. It is therefore also unexhausted and procedurally barred.

3

The Court therefore **RECOMMENDS** that Petitioner's motion be **DENIED** on issues 3-7, 9-10, 14-19, 22, 24-27, 30-36, and 39-50.

Issues 1 and 23

Petitioner complains that he received ineffective assistance of counsel when his trial attorney failed to: (1) investigate whether there was DNA evidence; (2) review certain voluntary statements given to the police; (3) challenge the victims' competency to testify; (4) investigate why the victims' mother rented a room out of her apartment; and (5) investigate the mother's motives for fabricating abuse charges. The Court notes that the State has merely given a pro forma, one-sentence rebuttal to these allegations that has provided no guidance on the issues presented.

In order to show a Sixth Amendment violation, Petitioner must meet the familiar *Strickland* standard. He must show that his attorney's performance was deficient by falling below an objective standard of reasonableness and that he was prejudiced by this deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A reviewing court must be highly deferential to counsel's performance. *Id*. at 694.

Petitioner claims that his attorney failed to investigate whether there was DNA evidence that could have implicated another person. This claim is without merit. Petitioner states that a proper investigation would have revealed that a "DNA probe evaluation" was conducted on July 15, 1998, and he points to the State's Exhibit 16 – a medical report on the only female victim, Ki.S. That document does not indicate that any DNA "probe" was conducted. Trial Transcript, Vol. 9, at Ex. 16. Indeed, the record clearly states that no sex assault evaluation kit was used in Ki. S.'s case. Id. The medical documents show that a colposcopy was performed, which involves a visual examination of the cervix in which the colposcopic instrument does not touch the child's body. Id.; Vol. 3 at 248. Petitioner's Response clearly indicates that he assumes a colposcope necessarily involves a DNA

exam. Response at 7. That is not the case, and Petitioner has not shown what DNA evidence, if any, his attorney failed to investigate, how the colposcope of Ki. S. could have benefitted his defense, or what potential evidence exists that was not investigated.

Petitioner next alleges that his attorney failed to investigate alleged conflicts in the medical records and failed to interview alibi witnesses that could have shown that damage to the victims' anal tissues was caused by constipation. This claim also fails. First, Petitioner fails to identify any alibi witness who should have been interviewed or called to testify. Second, he fails to demonstrate how additional testimony could have significantly rebutted evidence produced at trial. Medical testimony at trial noted that anal funnelling was found in several victims. As Petitioner states, testimony also showed that anal funneling could be consistent with constipation. Physician's assistant Joy Blackmun, who had considerable experience in examining abused children, testified that G.S., R.S. and J.S. each showed significant anal funneling that was consistent with penetration, with J.S. showing the most significant damage. Trial Transcript, Vol. 3 at 239-44.

However, she also specifically testified that none of the children had a history of constipation and that G.S. denied that he had been constipated. Id. at 239, 244. J.S.'s injuries were so significant that Blackman thought that they were more consistent with penetration than constipation. Id. at 243. In light of such direct testimony that specifically discounted the role constipation played in creating the victims' injuries, and the children's denial of constipation, Petitioner's attorney could reasonably have chosen not to pursue this topic lest it bring even greater attention to Blackmun's conclusion that penetration was the most likely cause of the injuries. Further, Petitioner has made no showing that he was prejudiced by any failure to pursue these issues.

Petitioner next claims his attorney failed to review voluntary statements given to the police by Debra Wilson, Kimberley Gotts, and teacher Ann Forrester. The Court assumes Petitioner is referring

5

to several outcry statements summarized below that form the basis of a separate claim for relief. He alleges such statements could have been used to impeach the witnesses at trial. The basis for this claim is unspecified, though Petitioner argues generally that the statements did not corroborate what the witnesses said at trial. Both Wilson and Gotts gave written pretrial statements, and the record contains a summary of Forrester's oral statements of what J.S. told her in class. Petitioner fails to point to any specific portion of these statements that could have laid the groundwork for impeaching the witnesses at trial. His claim is therefore entirely general and conclusory. He does not even allege that, had his attorney done all that Petitioner claims he failed to do, there is a reasonable probability the trial's outcome would have been different.

Petitioner further alleges that his attorney failed to challenge the competency of the children before trial. The record shows that Petitioner's attorney filed a motion to determine the competency of each child witness. The court instructed both the State and Petitioner's attorney that, under Texas law, the court would determine in camera whether the children were competent to testify and that neither side had the right to be present while it did so. Trial Transcript, Vol. 2 at 18. Consequently, Petitioner has shown no error.

Petitioner next alleges his trial attorney failed to investigate that, at the time the first allegation of abuse was reported, the victims' mother rented a room to a third person who could have been the sexual perpetrator. This claim is without merit. Petitioner's counsel was well aware that the victims' mother rented a room to a man known as Leon Gardner because he questioned social worker Monica Sanders about him at trial. Trial Transcript, Vol. 5 at 8-9. Sanders spoke with Gardner at the time the first report (which did not specifically allege sexual abuse) was received in 1996. Petitioner has shown no reason why his attorney was ineffective for not having Gardner testify at trial or how any testimony could have overcome the specific allegations against him made by the children – four of

6

whom testified at trial.

Petitioner also alleges that his attorney was ineffective for failing to investigate how drug abuse by the victims' mother provided a reason for her to accuse him of sexual abuse. Even if Petitioner's conclusory allegations are correct, however, he fails to demonstrate their relevance. Petitioner's conviction was not based merely on the mother's accusations but, as outlined more completely below, on a fully-developed record of identification by the victims and corroborating medical evidence.

Finally, Petitioner also complains that he received ineffective assistance of counsel on appeal when his attorney failed to raise in his PDR all the issues that had been presented on appeal. A prisoner has no constitutional right to counsel to pursue a PDR and therefore cannot claim that his constitutional right to effective representation was violated. *Moore v. Cockrell*, 313 F.3d 880, 881-82 (5th Cir. 2003).

The Court therefore **RECOMMENDS** that Petitioner's motion be **DENIED** on all issues related to ineffective assistance of trial and appellate counsel.

Issue 2

In his second ground for habeas relief, Petitioner claims that the State presented insufficient evidence that he anally penetrated his victims. Petitioner raised this issue in his Article 11.07 writs, but it has long been held that a claim of insufficient evidence is not cognizable in a state writ of habeas corpus. *West v. Johnson*, 92 F.3d 1385, 1398 n.18 (5th Cir. 1996); *see also Ex parte Easter*, 615 S.W.2d 719, 721 (Tex. Crim. App. 1981). It may only be put forward on direct appellate review. Petitioner did not raise this issue in his PDR, and it therefore has not been properly presented to the Court of Criminal Appeals. Because Petitioner cannot now return to state court, this issue is procedurally barred for the reasons stated above.

The Court **RECOMMENDS** that Petitioner's motion be **DENIED** on this issue.

Issues 8 and 11

Petitioner next alleges that the trial court erred in disallowing certain evidence at trial. Specifically, he complains that a psychological test and testimony by expert witness David Navarre could have shown he did not fit the profile of a sex offender. Navarrre met with Petitioner and administered a standard test called the MMPI-2. Based on the results, Navarre was prepared to testify that Petitioner did not fit the profile of a sex offender. The trial court disallowed such testimony. The appellate court held this ruling was within the court's discretion and did not violate Texas Rule of Evidence 403. A federal court will not reconsider the admissibility of evidence under state law. *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991).

The Supreme Court has held that state rulemakers have broad discretion in deciding what evidence can be excluded from criminal trials. *United States v. Scheffer*, 523 U.S. 303, 308 (1998). Federal habeas relief is warranted only when a trial court's evidentiary rulings are so extreme that they result in a denial of fundamental fairness. *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998). A restriction on the right to present relevant evidence violates the Due Process clause only when it "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996). Even when a trial court's error is of constitutional dimension, habeas relief is warranted only when the evidence has a substantial and injurious effect in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

Although the State has provided only pro forma arguments on this point, the Court's own review of the trial record shows that the evidentiary decision in this case does not reach this high standard. The kind of testimony excluded in this case has been admitted in Texas courts under some

8

circumstances. *See Kittelson v. Dretke*, 426 F.3d 306, 312 (5th Cir. 2005). While another court might very well have decided differently, Petitioner has not shown that the exclusion of Navarre's profile testimony was so injurious that it rendered the trial fundamentally unfair. The appellate court found that the facts were sufficient to support Petitioner's conviction, and the record shows that there was significant testimony from the victims that directly implicated Petitioner as well as medical evidence concerning the victims' physical condition. In the absence of such strong evidence of Petitioner's guilt, the trial judge's decision might have violated Petitioner's due process rights. But as the evidentiary record stands, the exclusion of Navarre's profile testimony does not give rise to habeas relief.

The Court therefore **RECOMMENDS** that Petitioner's motion be **DENIED** on these points.

Issues 12, 20, 28, and 37-38

Petitioner raises several grounds relating to the testimony of social worker, Trudy Davis, concerning abuse in children. According to Petitioner, the trial court erred in allowing Davis to testify: (1) as an expert in any regard; (2) on the typical behavior of abused children; (3) that it was not unusual for abused kids to have changing memories of abuse; (4) that there was literature supporting her field of expertise; and (5) that there was no potential rate of error to evaluate her observations.

The last of these claims is unexhausted. While he did raise the issue of Davis' admission as an expert witness in his PDR, his challenge was based exclusively on an alleged violation of Texas Rule of Evidence 702. *See* Appellant's Petition for Discretionary Review at 5-8. Petitioner failed to present any issue related to the "rate of error" issue in Davis' testimony.

Very liberally construed, he did raise the remaining issues concerning Davis in his state writ. In his Response, Petitioner relies exclusively on state law to argue that Davis was improperly

9

admitted as an expert witness. The appellate courts have already decided that the trial court complied with all the requirements under Texas law for allowing Davis to testify as an expert for the State in its rebuttal. *Smith*, *supra*, at 30-32. Davis testified that she was a licensed social worker, director of the Advocacy Center for Children, and a former caseworker and supervisor of sexual abuse investigations with CPS for eighteen years. She has taught and trained others in the fields of sexual abuse investigations and interviews and has interviewed many potentially abused children over a twenty-one year period. *Id*. at 31.

Other than making a conclusory claim that his constitutional rights were violated by Davis' admission and testimony as an expert, Petitioner does not argue in either his Petition or Response as to how his constitutional rights were violated. A trial court's evidentiary rulings warrant habeas relief only when they are so erroneous that they constitute a denial of fundamental fairness. Such testimony must be (1) wrongfully admitted and (2) have played a "crucial, critical, and highly significant role in the trial." *Little*, 162 F.3d at 866. When considering expert testimony, the evidence must be weighed against opposing counsel's ability to cross-examine the witness and the jury's ability to determine the weight to give to such evidence. *Barefoot v. Estelle*, 463 U.S. 880, 898-99 (1983).

As the state courts have found, the trial court did not err in applying Texas law. Nor is there evidence that Davis' testimony gave rise to fundamental unfairness in the trial process. Petitioner complains that Davis never interviewed the victims, failed to produce in court copies of the scientific literature she relied on, and improperly testified as to the truthfulness of the victims. These objections are misdirected. Davis did not give specific testimony concerning the victims. As the State made very clear during voir dire of Davis, it called her to testify only about the general characteristics of abused children based on her extensive experience. Trial Transcript, Vol. 6, at 77-79. Moreover, Davis' testimony was brief and general, and Petitioner's attorney cross-examined her with some vigor. Id.

at 78-88. The Court concludes that the Petitioner suffered no constitutional harm from the admission of Davis as an expert or by any of her testimony.

The Court therefore **RECOMMENDS** that Petitioner's motion be **DENIED** on all these issues.

Issues 13, 29

Petitioner makes two allegations concerning evidence that was allegedly withheld from the defense. First, he claims the State failed to release unspecified CPS records that would have exonerated him. Second, he alleges that the State withheld the victims' original outcry statements that had specific dates and signatures on them. Defendant claims these statements could have been used to impeach testimony at trial. Response at 48. The second claim was raised in Petitioner's state writ, but the more general first allegation was not. It is therefore unexhausted and procedurally barred from consideration.

In order to show that the suppression of evidence favorable to an accused violates due process, a petitioner must demonstrate that the material: (1) was suppressed; (2) was favorable; and (3) was material to his defense. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Evidence is material only if there is a reasonable probability that, had it been disclosed, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 684 (1985).

Petitioner does not specify precisely what outcry statements are involved in his claim. The appellate court summarized this issue as follows:

1. R. S. denied sexual abuse to CPS investigators in November, 1997, although a physical exam at that time showed signs consistent with abuse. R.S.'s grandmother, Debra Wilson, testified at trial that R.S. admitted to her in January, 1998, that Petitioner had abused him. R.S. testified at trial and reluctantly stated that Petitioner had touched his private parts with his hands – a statement at odds with what he said in his outcry.

2.       J. S. made an outcry to his first grade teacher, who testified that J. S. made unusual drawings in November, 1997, that led to an outcry of abuse by Petitioner. A week before this statement, J.S. had also told the teacher that Petitioner abused him. Physical exams of J.S. showed signs consistent with abuse. J.S. testified that Petitioner abused him.

3.       Debra Wilson was also the outcry witness for G. S. She testified that G. S. told her in January, 1998, that Petitioner abused him. G.S. testified that Petitioner had abused him. A physician also testified that G. S. showed signs consistent with abuse.

4.       Ki. S. made an outcry statement to her mother, Kimberly Gotts. Gotts testified that Ki.S. told her around April, 1996, that Petitioner abused her. A physical exam showed hymenal tears that were unusual for a child Ki. S.'s age. R. S. also testified that he saw Petitioner abusing Ki. S.

*Smith*, *supra*, at 6-8.

Petitioner has made no showing of a *Brady* violation. He has failed to present any evidence that demonstrates the outcry statements at issue were either exculpatory or that they were knowingly withheld by the State. As the State points out, all the outcry witnesses involved in this case except for one testified at trial and were subject to cross-examination, and the timing of the outcry statements was made clear in the testimony presented to the jury. Moreover, Petitioner has completely failed to show that there is a reasonable probability that the trial's outcome would have been different had the alleged suppression not occurred. The state courts found that the facts presented were sufficient to uphold the conviction, and Petitioner has made no attempt to show how the alleged impeachment value of the statements would have undermined the significant evidence that supports his conviction.

The Court therefore **RECOMMENDS** that Petitioner's motion be **DENIED** on these issues.

## Conclusion

The Court **RECOMMENDS** that Petitioner's Motion for Summary Judgment (Instrument No. 26) be **DENIED** and that the Petition for a Writ of Habeas Corpus of Glenn Floyd Smith be **DISMISSED**.

The Clerk shall send copies of this Report and Recommendation to the Petitioner by the means in place for transmission of same. Petitioner shall have until **February 23, 2006**, in which to have written objections, filed pursuant to 28 U.S.C. § 636(b)(1)(C), **physically on file** in the Office of the Clerk. The Objections shall be mailed to the Clerk's Office in Galveston, Texas 77553 at P.O. Drawer 2300. **Any Objections filed shall be contained in a written document specifically entitled "Objections to the Report and Recommendation of the Magistrate Judge"**, which will then be forwarded to the District Judge for consideration. Failure to file written objections within the prescribed time shall bar the aggrieved party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas this    2nd    day of February, 2006.

John R. Froeschner
United States Magistrate Judge